**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| **JANE DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. _____** |
| ) | **TRIAL BY JURY DEMANDED** |
| **COMMONWEALTH OF VIRGINIA,** ) | |
| **VIRGINIA COMMUNITY COLLEGE** ) | |
| **SYSTEM, AND THOMAS NELSON** ) | |
| **COMMUNITY COLLEGE,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY**

Plaintiff, by counsel, moves this Court for an order permitting her to proceed in this action under the pseudonym Jane Doe.  In support of this request, Plaintiff asserts as follows:

**BACKGROUND**

Plaintiff files this civil rights employment discrimination action against Defendants, the Commonwealth of Virginia, Virginia Community College System, and Thomas Nelson Community College (collectively referred to herein as "Defendants" or "TNCC"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., ("Title VII") and the Virginia Human Rights Act, Virginia Code §§ 2.2-3900, *et seq*. ("VHRA").  In the Complaint, Plaintiff alleges that she was a history instructor at TNCC from 2014 until 2021 and, during that time, had an impeccable career and reputation.  During the spring 2021, semester, however, Plaintiff, who is Caucasian, experienced continuous racially-motivated discrimination and harassment at the hands of one of her students, Student A.  Student A identifies as Black and Pacific Islander.

1

Specifically, Student A subjected Plaintiff to repeated verbal insults in one of Plaintiff's online courses.  She centrally, falsely, repeatedly, and without any basis in fact or reality proclaimed that Plaintiff was a "racist," "white supremacist," "homophobe," and "antisemite." Student A not only insulted Plaintiff directly, but she also publicized these highly-stigmatizing statements to Plaintiff's other students and TNCC faculty, including Plaintiff's supervisors and TNCC decision-makers.  Plaintiff's Complaint details all of the false and injurious insults to Plaintiff's character, morality, and professionalism.  Student A's conduct has harmed Plaintiff personally and professionally.

Plaintiff files this Complaint against TNCC specifically because TNCC knew of the Student A's conduct and failed to take any appropriate, effective, and prompt action to end it. Rather, TNCC acknowledged its illegality, stood by idly, and acquiesced and ratified Plaintiff's abusive environment.  What is worse, rather than fulfilling its duty to protect Plaintiff, TNCC took numerous adverse employment actions directly against her.  Those actions included, but are not limited to, terminating Plaintiff's employment at TNCC.  As a result, Plaintiff alleges that TNCC discriminated against her, likewise subjected her to and aggravated an already-existing hostile work environment, and retaliated against her for her protected opposition and participation activities.  Plaintiff's Complaint, which she incorporates herein, details TNCC's actions and inactions, which Plaintiff contends violate Title VII and, as a result, the VHRA.

## ARGUMENT

Based upon the unique circumstances of this action, this Court should permit Plaintiff to proceed pseudonymously as Jane Doe.  Specifically, the details in the Complaint highlight the false, harmful, repeated, and highly-stigmatizing characterizations to which Plaintiff was subjected in her employment, including that she was, *inter alia*, a "racist," "white supremacist,"

"homophobe," and "antisemite." These characterizations, all of which have no basis in fact or reality, warrant confidentiality because they constitute Plaintiff's private and highly-sensitive employment information and, if publicized in association with Plaintiff's real name, will cause Plaintiff further harm, scorn, and stigma. The allegations in the Complaint already demonstrate the real likelihood and reality of those harms. And even more generally, the mere accusation that Plaintiff is any of the revolting terms above, if publicized with her real name, will be so harmful to Plaintiff moving forward that it will irreversibly damage her career as a teacher and reputation. Thus, to permit Plaintiff to proceed under a pseudonym will preserve Plaintiff's privacy and protect her from further retaliatory harm that disclosure of her identity will cause. Finally, Defendant, which is a government entity, will suffer no prejudice or unfairness as a result of Plaintiff proceeding as a Jane Doe. For these and the other reasons below, this Court should permit Plaintiff to proceed and be identified solely as Jane Doe.

This Court has stated, "[t]here is a 'presumption of openness in judicial proceedings that generally requires disclosure of the identities of the parties to litigation.'" *A.D. v. Wyndham Hotels and Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 5269758, at *1 (E.D. Va., Mar. 20, 2020) (quoting *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 806 (E.D. Va. 2012)). This presumption exists, in part, because, "[i]dentifying the parties to judicial proceedings is a vital component of the courts' facilitation of public access and public scrutiny of judicial proceedings. In other words, "the people have a right to know who is using their courts." *Id.* Given this presumption, "[t]he ultimate test for deciding if a plaintiff should proceed anonymously is whether [s]he 'has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Pittsylvania Cty., Va.*, 844 F. Supp. 2d 724, 727 (W.D. Va. 2012) (internal quotation marks omitted) (quoting *Doe v. Frank*, 951 F.2d

320, 323 (11th Cir. 1992)).  This test exists because, moreover, because "[t]h[e] presumption of openness is well grounded in our nation's laws." *Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2016) (citing *Pittsylvania Cty.*, 844 F. Supp. 2d at 727).

However, the presumption above "operates only as a presumption and not as an absolute . . . ." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993).  In other words, "[t]he rule rather is that under appropriate circumstances anonymity may, as a matter of discretion, be permitted." *Id.*  In exercising discretion, a court should consider the following five factors:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, [5] relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* (alterations added).  While a court should consider these factors, they "are not exhaustive; other factors may be relevant depending on the specific circumstances of a case." *Pittsylvania Cty.*, 844 F. Supp. 2d at 728.  At the same time, "[n]ot all of these factors may be relevant to a given case, and there may be others that are." *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249, 2020 WL 1287960, at *3 (W.D. Va. Mar. 18, 2020).  "At bottom, . . . the trial court must 'carefully review *all* the circumstances of [the] case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Alger*, 317 F.R.D. at 39 (citing *Pittsylvania Cty.*, 844 F. Supp. 2d at 729 (quoting *Frank*, 951 F.2d at 323)) (alteration added).

> **a.    Plaintiff has a substantial interest in preserving the privacy of her personal and highly-sensitive employment information under the unique facts here.**

The first *James* factor above weighs in Plaintiff's favor, warranting pseudonymity.  That

is, Plaintiff seeks pseudonymity not to "avoid the annoyance and criticism" that attend litigation; rather, she seeks it solely to preserve the privacy of her personal and highly-sensitive employment information, which uniquely includes false, harmful, and highly-stigmatizing statements that Plaintiff is a "racist," "white supremacist," "homophobe," or "antisemite."  Publicizing these statements in association with Plaintiff's real name will cause significant harm to Plaintiff that will arguably be irreversible for her teaching career and reputation as a moral and upright person.  This interest for Plaintiff is paramount here.

As indicated above, this *James* factor "requires the court to consider whether [Jane] Doe has identified a 'specific sensitive and personal privacy interest, or whether she merely seeks to 'avoid the annoyance and criticism' that come with litigation." *Pittsylvania Cty.*, 844 F. Supp. 2d at 729 (internal and external citations omitted).  In this context, disclosure of "personal information of the utmost intimacy" may warrant "abandoning the presumption of openness in judicial proceedings." *Doe 1 v. Merten*, 219 F.R.D. 387, 392 (E.D. Va. 2004).  Here, maintaining the confidentiality of Plaintiff's name in association with terms synonymous with moral bankruptcy and an unfitness for participation in modern society (i.e., "racist," "white supremacist," "homophobe," or "antisemite") is precisely the situation detailing "personal information of the utmost intimacy" and necessitating pseudonymity.

Although counsel was unable to locate any decision from this Court addressing pseudonymity in Plaintiff's unique context, decisions exist in which this Court and its sister jurisdiction have permitted pseudonymity in an analogous situation.  Specifically, this Court and its sister jurisdiction have permitted plaintiffs to proceed pseudonymously in situations involving false and disputed accusations that plaintiffs have engaged in sexual assault or misconduct.  *See, e.g.*, *Doe v. the Rector and Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593-94 (E.D.

Va. 2016) (permitting an adult plaintiff accused of sexual misconduct to proceed under a pseudonym due to the stigma attached to the accusation); *Alger*, 317 F.R.D. at 40 (citations omitted) (permitting an adult plaintiff accused of sexual assault to proceed pseudonymously due to the "sufficiently sensitive and personal" nature of a sexual misconduct charge).  In *Rector and Visitors of George Mason University*, *supra*, this Court explained this decision, "there can be no doubt that the litigation here focuses on 'a matter of sensitive and highly personal nature'" and "the mere accusation of [sexual misconduct], if disclosed, can invite harassment and ridicule."  179 F. Supp. 3d at 593.  This Court added, "it is possible that plaintiff could be targeted for 'retaliatory physical or mental harm' based on the accusations alone."  *Id.*  Critically, this Court added that a plaintiff "should not have [her] name forever associated in the public mind with an accusation that carries a significant social stigma."  *Id.* at 594.  *See also Doe v. Va. Polytechnic Inst. and State Univ.*, Civil Action No. 7:21-CV-378, 2022 WL 972629, at *2 (W.D. Va. March 30, 2022) (permitting a plaintiff student accused of sexual misconduct to proceed under a pseudonym because, in part, an allegation of sexual assault or abusive dating conduct involves sensitive and highly personal facts that can invite harassment and ridicule).

In addition to these analogous decisions, counsel was able to locate one decision outside of this Court and its sister jurisdiction more on point factually to Plaintiff's unique situation, permitting pseudonymity.  In *Doe #1 v. Syracuse University,* the United States District Court for the Northern District of New York permitted several plaintiffs, who had been falsely accused of racism, homophobia, and bigotry, to proceed pseudonymously.  No. 5:18-CV-0496, 2018 WL 7079489 (N.D. N.Y. Sept. 10, 2018), *report and recommendation adopted,* 2020 WL 2028285 (N.D.N.Y., Apr. 28, 2020).  There, plaintiff college students had engaged in a "roast," during which "'hot-button' issues that are frequently discussed and debated in many different settings

across the country" were raised.  *Syracuse University*, 2018 WL 7079489, at *4.  Defendants consequently and falsely branded plaintiffs' as "racist, anti-Semitic, homophobic, sexist, and hostile to people with disabilities."  *Id.*  Requesting pseudonymity, plaintiffs argued that this branding constituted a "'modern day Scarlet Letter' and, thus, was a matter of a "highly sensitive and personal nature."  The Court agreed with the argument, finding that defendants' statements "implicate[d] the highly sensitive and personal matters of racism, sexism, anti-Semitism, homophobia, ableism, and sexual misconduct" and, as such, are "of a sensitive and personal nature . . . weigh[ing] in favor of plaintiffs' anonymity."  *Id.* (alteration added).

Here, Plaintiff's situation is analogous not only to the situations this Court and its sister jurisdiction have encountered in their *Doe* decisions above but also on point with the *Syracuse University* decision.  The mere accusation, which is baseless and devoid of reality here, that Plaintiff is a "racist," "homophobe," "white supremacist," and "antisemite" carries with it a highly-damaging and stigmatizing impact akin to an accusation, as in the above *Doe* decisions, that a personal has committed a sexual assault.  All of these terms characterize a person as morally bankrupt, odious, revolting, and unfit for participation in modern society.  Moreover, like in *Syracuse University*, publication of such terms in association with Plaintiff's name will, in short, place a "modern day Scarlett Letter" on her.  This is especially the situation when viewed in conjunction with the adverse employment action TNCC took against her, irresponsibly and unlawfully lending credibility to those statements.

Plaintiff does not speak to speculative interests or harms in requesting pseudonymity.  At the outset, many harms have actually already befallen her, as alleged in the Complaint.  And apart from Plaintiff's alleged experiences, a simple internet search reveals the severe effect that a false racism     or     similar     accusation     can     have     on     a     person.     *See,     e.g.*,

https://www.cnn.com/2019/05/25/us/false-racism-internet-mob-chipotle-video/index.html (entitled, "How an internet mob falsely painted a Chipotle employee as racist" and discussing the viral public scorn the employee faced) (last visited May 15, 2022); https://newcriterion.com/issues/2013/10/racism-inc (entitled, "Racism, Inc." and discussing that "false accusations of racism are just as offensive as racism itself") (last visited May 15, 2022).  As Plaintiff has alleged in the Complaint, Student A, aware of her access to the "internet mob," made her intentions and threats known to Plaintiff and TNCC when she informed them of her plan to re-publicize the above false accusations through legal action and on Twitter.  As the allegations in the Complaint also show, TNCC subsequently alienated and ostracized Plaintiff.

Upon information and belief, moreover, Plaintiff was exonerated, and the accusations against her are simply devoid of any factual basis or link to reality.  Nonetheless, the disclosure of her identity in conjunction with the terms above will subject her to an unwarranted and irreversible public alienation, attack, and ostracism.  This is especially true in a community in which Plaintiff plans to teach young adults.  The end result is to cause the very harm Plaintiff has already sustained and aims to remedy in this action.  Plaintiff must bring this action to vindicate her civil rights, but she wishes to do so without further personal, professional, and reputational harm.  Accordingly, for these reasons, Plaintiff contends that she has satisfied the first *James* factor above.[1]

**b.    Plaintiff faces a risk of retaliatory harm from the disclosure of her identity in connection with such false, revolting, and high-stigmatizing accusations.**

For similar reasons, the second *James* factor also weighs in Plaintiff's favor.  Specifically, identification of Plaintiff in connection with the above terms, will likely cause Plaintiff to face retaliatory harm in her career and from the public.  Thus, pseudonymity is appropriate.

---

[1] Notably, to respect total confidentiality here, Plaintiff has also exercised care in her Complaint by keeping the identity of Student A anonymous.

"The second *James* factor examines whether identification poses a risk of retaliatory physical or mental harm to the plaintiff or innocent non-parties." *Alger*, 317 F.R.D. at 40.   In evaluating this factor, a court should place "particular importance on the retaliatory nature of any threatened harm." *Pittsylvania Cty.*, 844 F. Supp. 2d at 732.   "Fear of humiliation and embarrassment or the threat of economic harm, standing alone, is not a sufficient reason to grant a motion to proceed pseudonymously." *Id*. at 733 (citations omitted).

The reasons Plaintiff has stated above for the first *James* element also support that the second *James* element weighs in her favor.  Additionally, although she more than reasonably fears embarrassment and humiliation from the public disclosure of her identity in connection with, *inter alia*, racism, homophobia, white supremacy, and antisemitism, Plaintiff does not seek pseudonymity solely for this reason.   As Plaintiff has alleged in her Complaint, TNCC discriminated and retaliated against her because of her race for these reasons and retaliatorily terminated her career at TNCC based upon nothing else.  The treatment to which Plaintiff was subjected by both Student A and TNCC not only caused Plaintiff economic damages but also resulted in significant emotional harm and the development of a medical disorder, namely bruxism. As stated above, moreover, Student A has threatened to expose Plaintiff on Twitter and expressly told her that she would "suffer" the "consequences" of her complaints about Student A.  Under the circumstances, it is reasonable to infer that Plaintiff will experience further harm, mental and physical, and alienation and ostracism from the teaching community and public.  The foreseeability of this harm is evident should the media report on this action, as it has with an analogous action in Virginia involving a student-teacher racial issue.  *See, e.g.,*https://www.newsweek.com/banana-left-door-pushes-teacher-sue-student-over-racism-1694937  (nationally  covering  a  Virginia lawsuit by a teacher against a student involving race).  Because Plaintiff satisfies this element, this

Court should permit her to proceed as Jane Doe.[2]

      **c.**    **Plaintiff's age warrants pseudonymity.**

This Court should also find the third *James* factor, namely the Plaintiff's age, either weighs in favor of pseudonymity or, at the least, does not weigh against it. "The third *James* factor concerns the ages of the persons whose privacy interests are sought to be protected." *Pittsylvania Cty.*, 844 F. Supp. 2d at 729. Generally speaking, the fact that a plaintiff is "a minor" and possesses the "special vulnerability of a child" weigh in favor of pseudonymity. *Id.* at 730. However, this rule does not automatically prohibit an adult from requesting anonymity. For example, this Court has found that adult college students are still "young adults and so 'may still possess the immaturity of adolescence'," warranting anonymity. *Alger*, 317 F.R.D. at 41 (quoting *Yacovelli v. Moser*, No. 1:02-cv-596, 2004 U.S. Dist. LEXIS 9152, at *24 (M.D.N.C. May 20, 2014)).

Admittedly, Plaintiff is not a minor or a young college student. However, she is young, and her age should still be a factor. Plaintiff is only 34 years old and has her whole teaching career ahead of her. Any public association of Plaintiff's real name with the accusations above, if online or reported on by the media, will cause irreversible damage to her budding career, let alone her reputation. For this reason, this Court should find that this third *James* factor either weighs in Plaintiff's favor or, at the least, does not weigh against her.

      **d.**    **Because Plaintiff's action is solely against a government entity, this fourth *James* factor should weigh in favor of pseudonymity.**

The fourth *James* factor also weighs in Plaintiff's favor. Specifically, "[t]he fourth *James* factor looks at the identity of the defendant in the case and asks whether the plaintiff

---

[2] As alleged in the Complaint, Student A also questioned a TNCC employee about Plaintiff's family, including her handicap daughter, indicating that she had investigated Plaintiff's family and private life. Thus, a risk exists that other innocent parties, including her family, may also be affected by the public disclosure of Plaintiff's name in conjunction with the terms above.

is pursuing legal action against the government or a private party." *Alger*, 317 F.R.D. at 40.

"Courts are more likely to allow a plaintiff to proceed under a pseudonym when the plaintiff

challenges the government or government activity." *Va. Polytechnic Inst. and State Univ.*, 2018

WL 5929647 at *3 (citing *Yacovelli*, 2004 U.S. Dist. LEXIS 9152 at *24–25).  This likelihood is

because:

> although the mere filing of a lawsuit against a private party may cause the defendant
> reputational and economic harm, such that fairness requires the identification of the
> plaintiffs, the government is not vulnerable to similar reputational harm,
> particularly in a case involving a challenge to the constitutional, statutory, or
> regulatory validity of government activity.  Further, "[u]se of pseudonyms is more
> likely to be appropriate in cases challenging government activity because there is
> both 'arguably a public interest in a vindication of . . . rights' and a risk of
> stigmatization of the plaintiff, who often represents a minority interest."

*Va. Polytechnic Inst. and State Univ.*, 2018 WL 5929647 at *3 (internal citations omitted).

Plaintiff challenges the lawfulness of TNCC's discriminatory and retaliatory activities and

names only the government entity Defendants.   Under this *James* factor, therefore, these

Defendants are not as vulnerable as a private party to economic and reputational harm, and, in fact,

Plaintiff submits that such harm is highly unlikely.  The harm to Plaintiff, however, is far greater

absent use of a pseudonym.  Plaintiff's use of a pseudonym will pursue the public's interest in the

vindication of a civil right against the government and diminish the risk of societal stigma, *supra*,

to Plaintiff, who represents a minority interest.  See *Rector and Visitors of George Mason Univ.*,

179 F. Supp. 3d at 594 (stating, "'the public['s] strong interest in monitoring . . . the position that

. . . government agencies take in litigation' is vindicated here because the public has full access to

everything the government has filed with the exception of plaintiff's . . . identit[y].").[3]

---

[3] And, again, Plaintiff has exercised care in not revealing Student A's identity in the Complaint.

e.    **Plaintiff's use of a pseudonym will result in no prejudice or unfairness to JMU.**

Finally, the fifth *James* factor weighs in Plaintiff's favor.  "The fifth *James* factor examines the risk of unfairness to the defendant from allowing the plaintiff to proceed anonymously." *Alger*, 317 F.R.D. at 41.  Notably, a defendant's awareness of a plaintiff's identity "diminish[es] any risk of unfairness to the [defendant] should [a] plaintiff be permitted to proceed anonymously." *Pittsylvania Cty.*, 844 F. Supp. 2d at 731, n.6.  Moreover, "any risk of unfairness to a defendant as a consequence of allowing a plaintiff to proceed anonymously is minimized when the issues raised are purely legal and do not depend on identifying the specific parties.") *Merten*, 219 F.R.D. at 394 n.22 (internal quotation marks and citation omitted).

Plaintiff's use of a pseudonym will result in no prejudice or unfairness to Defendants. Defendants are aware of Plaintiff's identity.  They are also aware of Student A's identity.  As a result, Defendants will be able to access and evaluate relevant evidence, most if not all of which is in their possession, locate and meet with witnesses, and have the benefit of discovery from Plaintiff.  In this manner, Defendants can prepare a complete defense.  In short, the fair disposition of the issues in this action do not depend whatsoever upon Plaintiff's identity.  *See also Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (stating "[t]he assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name.")  For these reasons, this Court should find that this fifth and final *James* factor weighs in Plaintiff's favor.

## CONCLUSION

This Court should permit Plaintiff to proceed and be identified in this action pseudonymously as Jane Doe.  The *James* factors collectively weigh in her favor.  Moreover, Plaintiff's substantial interest in the privacy of her employment information, which contains false and highly-stigmatizing accusations, is compelling and outweighs the presumption of openness in

this forum. Thus, Plaintiff requests that this Court grant this motion and, for this Court's convenience, attaches a Proposed Order.

**Respectfully submitted,**

_____/s/_____
Nicholas Simopoulos, VSB #68664
Simopoulos Law, PLLC
11 South 12th Street
Richmond, Virginia 23219
(804) 220-5755
nicholas@simopouloslaw.com
*Counsel for Plaintiff*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of May, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and served via electronic mail a copy of the same upon Defendants as follows:

Noëlle L. Shaw-Bell, Esquire
Assistant Attorney General
300 Arboretum Place, Ste 200
Richmond, Virginia 23236
(804) 819-4432
Nshaw-bell@vccs.edu

_____/s/_____
Nicholas Simopoulos, VSB #68664
Simopoulos Law, PLLC
11 South 12th Street
Richmond, Virginia 23219
(804) 220-5755 (Tel)
nicholas@simopouloslaw.com
*Counsel for Plaintiff*